**SECOND DIVISION**
**BARNES, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**February 26, 2013**

# In the Court of Appeals of Georgia

A12A1713. RENTON v. WATSON.

BARNES, Presiding Judge.

Dana Renton filed an amended complaint against Monica Watson in which she sought damages for malicious prosecution, defamation, and intentional infliction of emotional distress. The trial court granted Watson's motion to dismiss the amended complaint for failure to state a claim upon which relief could be granted and awarded her attorney fees. For the reasons discussed below, we affirm the trial court's dismissal of the malicious prosecution and emotional distress claims, but reverse its dismissal of the defamation claim and its award of attorney fees.

Under OCGA § 9-11-12 (b) (6), a motion to dismiss for failure to state a claim upon which relief can be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable

facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor.

(Citation and punctuation omitted). *Anderson v. Daniel*, 314 Ga. App. 394, 395 (724 SE2d 401) (2012). Additionally, in considering whether a motion to dismiss should be granted, the trial court may consider exhibits attached to and incorporated into the complaint. See OCGA § 9-11-10 (c); *Bakhtiarnejad v. Cox Enterprises*, 247 Ga. App. 205, 208 (1) (541 SE2d 33) (2000).

Mindful of these principles, we turn to the allegations in the present case. The complaint alleges that Renton discovered that Watson was having an extramarital affair, which caused Watson and her ex-husband to divorce. According to the complaint, Watson, who "harbor[ed] ill will towards [Renton]" for discovering the affair, maliciously and without any foundation applied for a warrant to have Renton arrested for forgery. Consequently, Renton was ordered to appear at a hearing on the warrant application before the Magistrate Court of Carroll County where Watson was to appear as the prosecuting witness.

2

The complaint further alleges that at the beginning of the hearing on the warrant application, Watson falsely declared that Renton had forged her name when the magistrate inquired about the nature of the case. However, before the hearing proceeded any further, the magistrate recessed the proceedings so that counsel for the parties could attempt to negotiate a resolution. After counsel reached an agreement, Watson voluntarily dismissed her warrant application without prejudice.

Renton subsequently filed her verified complaint for damages against Watson, asserting claims for malicious prosecution, intentional infliction of emotional distress, punitive damages, and attorney fees. Watson answered, moved to dismiss the complaint for failure to state a claim upon which relief could be granted under OCGA § 9-11-12 (b) (6), and moved for attorney fees under OCGA § 9-15-14. Renton responded to the motions and also amended her complaint to add a claim for defamation per se. Renton attached as an exhibit to her amended complaint the transcript of the hearing before the magistrate on the arrest warrant application.

Following a hearing on the motion to dismiss, the trial court granted Watson's motion and dismissed Renton's amended complaint. The trial court concluded that the malicious prosecution claim failed as a matter of law because an arrest warrant was never issued. The trial court concluded that the defamation and intentional

3

infliction of emotional distress claims were barred by the absolute privilege afforded for statements made in judicial proceedings. The trial court also awarded $1,400 in attorney fees to Watson on the ground that Renton had failed to present a justiciable issue of law or fact. This appeal followed.

1. Renton first contends that the trial court erred in dismissing her malicious prosecution claim on the ground that an arrest warrant had never been issued. We disagree.

The six essential elements of a malicious prosecution claim are "(1) prosecution for a criminal offense; (2) instigated without probable cause; (3) with malice; (4) under a valid warrant, accusation or summons; (5) which has terminated favorably to the plaintiff; and (6) has caused damage to the plaintiff." *Wal-Mart Stores v. Blackford*, 264 Ga. 612, 613 (449 SE2d 293) (1994). See OCGA § 51-7-40. As the fourth element makes clear, "[t]o be actionable as a malicious prosecution under [our] precedents, an attempt to have someone prosecuted must result in the issuance of a valid warrant, summons, accusation, or other formal process." *Peterson v. Banker*, 316 Ga. App. 571, 572 (730 SE2d 89) (2012) (citing cases).

The allegations of the amended complaint and the transcript of the warrant application hearing reflect that the warrant application submitted by Watson did not

4

result in the issuance of an arrest warrant. Rather, Watson voluntarily dismissed her warrant application, and Renton was never arrested. Given that the no arrest warrant was issued by the magistrate, the trial court properly dismissed her malicious prosecution claim. See *Peterson*, 316 Ga. App. at 572 (trial court erred in awarding damages for malicious prosecution "for the warrant applications that resulted in the issuance of no warrant"); *Cox v. Turner*, 268 Ga. App. 305, 306 (1) (601 SE2d 728) (2004) ("Since it is clear from the pleadings that a warrant was not issued, [the plaintiff's] claim for malicious prosecution must fail."). See also *Swift v. Witchard*, 103 Ga. 193 (2) (29 SE 762) (1897) ("Simply making an affidavit before a justice of the peace, charging one with an offense against the criminal laws of this State, when not followed up by an arrest, does not render the prosecution, even if malicious and without probable cause, actionable.").

Renton, however, emphasizes that a malicious prosecution claim can be predicated on a valid warrant, accusation *or* summons. See *Wal-Mart Stores*, 264 Ga. at 613. Because she was ordered to appear before the magistrate for the hearing on the warrant application, Renton maintains that she was "summoned" before a court and thus satisfied the fourth element of a malicious prosecution claim even without the issuance of an arrest warrant. But "summons" in this context means formal legal

5

process charging a person with a criminal offense and conferring a court jurisdiction over the subject matter. See *Peterson*, 316 Ga. App. at 572 (malicious prosecution claim requires "issuance of a valid warrant, summons, accusation, *or other formal process*") (emphasis supplied); *Cary v. Highland Bakery Inc.*, 50 Ga. App. 553, 554-555 (179 SE 197) (1935) (malicious prosecution claim requires that "the warrant or other accusation or summons *charging the plaintiff with a criminal offense* be a valid warrant, accusation, or summons, *charging such person with some criminal offense.*") (emphasis supplied). For example, certain misdemeanor offenses may be tried upon a summons rather than an accusation. See, e. g., OCGA §§ 17-7-71 (b) (2); 17-7-72; 17-7-73. The magistrate's order requiring Renton to attend the warrant application hearing thus was not a "summons" as that term is understood in the malicious prosecution context.

Renton relies upon *McNeely v. Home Depot*, 275 Ga. App. 480, 482 (621 SE2d 473) (2006), as authority for the proposition that a malicious prosecution claim can be brought so long as the plaintiff is required to appear before a court. In *McNeely*, we held that evidence that the plaintiff was brought before a judge raised an inference that he was taken before a "committing court," which went to the issue of whether the plaintiff was "prosecuted," the first element of a malicious prosecution claim. See

6

*Wal-Mart Stores*, 264 Ga. at 613 (setting out six elements of a malicious prosecution claim); *Page v. Citizens' Banking Co.*, 111 Ga. 73, 84 (4) (36 SE2d 418) (1900) (inquiry before a "committing court" amounts to a "prosecution"). See also OCGA § 51-7-42 ("[A]n inquiry before a committing court or a magistrate shall amount to a prosecution."). But that was a separate legal question from whether the fourth element of a malicious prosecution claim – issuance of a valid warrant, summons, or accusation – had been satisfied. See *Swift*, 103 Ga. at 193 (2) (noting that "there must be at least have been an arrest, *and* an inquiry before a committing court," before a malicious prosecution claim is actionable) (emphasis supplied). Moreover, in discussing the factual background in *McNeely*, this Court made clear that an arrest warrant had been sworn out against the plaintiff, with the result that he had been arrested and jailed for several days before he was brought before a judge. See *McNeely*, 275 Ga. App. at 481. Because the fourth element of a malicious prosecution claim clearly had been satisfied and was not at issue in *McNeely*, Renton's reliance on the case is misplaced.

2. Renton next contends that the trial court erred in dismissing her defamation claim on the ground that it was barred by the absolute privilege for statements made in judicial proceedings. We conclude that the trial court was correct to dismiss

7

Renton's defamation claim to the extent that it was predicated on statements made by Watson in her warrant application and at the hearing on the application because those statements were absolutely privileged. But, construed in Renton's favor, her complaint also alleges the communication of defamatory statements to third parties that were not privileged. Consequently, the trial court committed error by dismissing Renton's defamation claim *in toto*.

> Generally, there are four elements in a cause of action for defamation: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm.

(Citation and punctuation omitted.) *Wertz v. Allen*, 313 Ga. App. 202, 205 (1) (721 SE2d 122) (2011). Some statements, although defamatory, are not actionable because they are considered privileged. See OCGA §§ 51-5-7; 51-5-8. There are two types of privilege, absolute and conditional. *Wertz*, 313 Ga. App. at 206 (1). "Communications which are afforded an absolute privilege cannot form the basis of a defamation action, regardless of the falsity of the statements or the speaker's malicious intent; conditionally privileged statements, on the other hand, are actionable upon a showing of malice. (Citation and punctuation omitted.) Id.

8

OCGA § 51-5-8, which grants an absolute privilege from suit for defamatory statements made in judicial "pleadings," provides:

All charges, allegations, and averments contained in regular pleadings filed in a court of competent jurisdiction, which are pertinent and material to the relief sought, whether legally sufficient to obtain it or not, are privileged. However false and malicious such charges, allegations, and averments may be, they shall not be deemed libelous.

See *Stewart v. Walton*, 254 Ga. 81 (2) (326 SE2d 738) (1985) (noting that OCGA s 51-5-8 creates an absolute privilege from suit).[1] The absolute privilege afforded by OCGA § 51-5-8 is not limited to "pleadings" as defined by OCGA § 9-11-7 (a) of the Civil Practice Act but "has been more broadly construed . . . to include 'official court documents' and acts of 'legal process.'" (Citations and punctuation omitted.) *Williams v. Stepler*, 227 Ga. App. 591, 595 (3) (490 SE2d 167) (1997).

---

[1] The privilege afforded by OCGA § 51-5-8

is not intended so much for the protection of those engaged in the public service and in the enactment and administration of law, as for the promotion of the public welfare, the purpose being that members of the legislature, judges of courts, jurors, lawyers, and witnesses may speak their minds freely and exercise their respective functions without incurring the risk of a criminal prosecution or an action for the recovery of damages.

(Citation and punctuation omitted.) *Fedderwitz v. Lamb*, 195 Ga. 691, 696 (25 SE2d 414) (1943).

9

Furthermore, in addition to OCGA § 51-5-8, Georgia courts have afforded an absolute privilege to statements made in court by a witness that are responsive to a question posed by the trial court or counsel. See *Rivers v. Goodson*, 188 Ga. App. 661 (373 SE2d 843) (1988); *Gallaher v. Teeple*, 183 Ga. App. 31, 35 (2) (357 SE2d 808) (1987); *Hendrix v. Daughtry*, 3 Ga. App. 481, 482-483 (60 SE 206) (1908). Likewise, a proffer of a witnesses's proposed testimony made to the trial court is absolutely privileged, if the testimony itself would be relevant to the proceedings. See *Bell v. Anderson*, 194 Ga. App. 27, 28-29 (389 SE2d 762) (1989).

The amended complaint alleges that Watson falsely accused Renton of forgery in her arrest warrant application and at the hearing on the warrant application in response to an inquiry from the magistrate. We conclude that Watson's allegedly false statements were absolutely privileged under OCGA § 51-5-8 and our precedent affording an absolute privilege to responsive statements made by a witness in court. See *Bell*, 194 Ga. App. at 28-29; *Rivers*, 188 Ga. App. at 661; *Gallaher*, 183 Ga. App. at 35 (2); *Hendrix*, 3 Ga. App. at 482-483. See also *Watkins v. Laser/Print-Atlanta, Inc.*, 183 Ga. App. 172, 173 (2) (358 SE2d 477) (1987), citing *Francis v. Wood*, 75 Ga. 648 (1886) ("It is well established that an affidavit before a magistrate, made for the purpose of causing an arrest, will not support an action for libel, though falsely

10

and maliciously made."). Hence, the trial court committed no error in dismissing Renton's defamation claim predicated on the allegedly false statements by Watson made in the arrest warrant application and the warrant application hearing.[2]

Significantly, however, another paragraph of the amended complaint pertaining only to the defamation claim alleges more generally that Watson made her false statements about Renton "to third parties without privilege." The paragraph is broad and conclusory, but that is not fatal to a plaintiff's claim at the motion-to-dismiss stage. See *Ledford v. Meyer*, 249 Ga. 407, 408-409 (2) (290 SE2d 908) (1982) (noting in defamation case that "conclusions may generally be pleaded under the Civil Practice Act" and that "[u]nder this 'notice' theory of pleading[,] it is immaterial

---

[2] Relying upon *Erfani v. Bishop*, 251 Ga. App. 20, 24-25 (2) (b) (553 SE2d 326) (2001), Renton contends that statements subject to the privilege afforded by OCGA § 51-5-8 should be actionable if the defendant is alleged to have made the statements falsely and with malice. But, as discussed above, our precedent demonstrates that OCGA § 51-5-8 affords statements falling within its parameters an absolute rather than a conditional privilege, and a defamatory statement afforded an absolute privilege is not actionable, "regardless of the falsity of the statements or the speaker's malicious intent." (Citation and punctuation omitted.) *Wertz*, 313 Ga. App. at 206 (1). To the extent that *Erfani* suggests that defamatory statements falling within OCGA § 51-5-8 are actionable if made falsely and with malice, that suggestion is non-binding dicta because the plaintiff in that case did not allege that the defendant made the statements at issue falsely and with malice, and because the Court concluded that the defamation claim was barred by the applicable statute of limitations. See *Erfani*, 251 Ga. App. at 24 (2) (b).

11

whether a pleading states conclusions or facts as long as fair notice is given, and the statement of claim is short and plain") (citations, punctuation, and emphasis omitted). See also *Infinite Energy, Inc. v. Pardue*, 310 Ga. App. 355, 361 (3) (713 SE2d 456) (2011) (plaintiff's conclusory allegations regarding malice did not render defamation claim subject to dismissal for failure to state a claim upon which relief could be granted).[3] In light of this paragraph, we cannot say that Renton could not possibly introduce evidence within the framework of her amended complaint to support a claim for defamation. It is conceivable that Renton could introduce evidence showing that Watson made false statements to third parties about her having committed forgery – separate and apart from Watson's statements made in the arrest warrant application and at the hearing on the application – that were not privileged. Accordingly, the trial court erred in dismissing Renton defamation claim to the extent that the amended complaint could be construed as alleging that Watson

---

[3] "The proper remedy for [a defendant] seeking more particularity is by motion for a more definite statement" rather than by motion to dismiss for failure to state a claim. *Cochran v. McCollum*, 233 Ga. 104, 105 (210 SE2d 13) (1974). See OCGA § 9-11-12 (e). A trial court also has the inherent authority to order a more definite statement even in the absence of a motion filed by the defendant. See *Bush v. Bank of New York Mellon*, 313 Ga. App. 84, 92 (720 SE2d 370) (2011).

communicated unprivileged, defamatory statements to third parties outside the context of the warrant application proceedings.

3. Renton next contends that the trial court erred in dismissing her claim for intentional infliction of emotional distress. We disagree and affirm the dismissal of this claim, albeit on an different ground than the trial court.[4] See *Pollman v. Swan*, 314 Ga. App. 5, 5-6 (723 SE2d 290) (2011) ("A grant of summary judgment must be affirmed if right for any reason, whether stated or unstated. It is the grant itself that is to be reviewed for error, and not the analysis employed.") (citations, punctuation, and footnote omitted).

> The elements of a cause of action for intentional infliction of emotional distress are: (1) intentional or reckless conduct; (2) that is extreme and outrageous; (3) a causal connection between the wrongful conduct and the emotional distress; and (4) severe emotional distress. Further, liability for this tort has been found only where the conduct has

---

[4] The trial court dismissed Renton's emotional distress claim on the ground that the allegedly false statements made by Watson in the arrest warrant application and the hearing were absolutely privileged under OCGA § 51-5-8. But OCGA § 51-5-8 applies only to libel claims. See *Morrison v. Morrison*, 284 Ga. 112, 113 (2) (663 SE2d 714) (2008); *Kluge v. Renn*, 226 Ga. App. 898, 900 (2) (487 SE2d 391) (1997). Thus, Renton's emotional distress claim could not be dismissed pursuant to OCGA § 51-5-8. Nevertheless, Watson also argued in the trial court that Renton's emotional distress claim should be dismissed on the alternative ground that her conduct did not rise to the requisite level of outrageousness.

13

been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

(Citations and punctuation omitted.) *Ferrell v. Mikula*, 295 Ga. App. 326, 333 (3) (672 SE2d 7) (2008). "Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law." (Citation and punctuation omitted.) *Frank v. Fleet Finance, Inc. of Ga.*, 238 Ga. App. 316, 318 (518 SE2d 717) (1999).

While the amended complaint alleges that Watson submitted an application for an arrest warrant containing false allegations against Renton, the amended complaint and transcript of the warrant application hearing also reflect that Watson voluntarily dismissed the application before a warrant was issued and thus before Renton was arrested. Under these circumstances, we conclude as a matter of law that Watson's conduct was not so atrocious or utterly intolerable as to rise to the level of intentional infliction of emotional distress, and the trial court committed no error in dismissing the claim. Cf. *Amstadter v. Liberty Healthcare Corp.*, 233 Ga. App. 240, 243 (2) (503

14

SE2d 877) (1998) (mere filing of a lawsuit does not rise to the level of outrageousness to support an emotional distress claim).[5]

4. Lastly, Renton contends that the trial court erred in granting Watson's request for attorney fees under OCGA § 9-15-14 on the ground that Renton had filed an action that lacked any justiciable issue of law or fact. We agree.

The trial court's order awarding attorney fees tracks the statutory language of OCGA § 9-15-14 (a), which "provides that the trial court shall award reasonable and necessary attorney fees where the offending party's position lacked any justiciable issue of law or fact so that it could not be reasonably believed that a court would accept it." (Citation and punctuation omitted.) *La Petite Academy v. Prescott*, 234 Ga. App. 32, 34 (2) (506 SE2d 183) (1998).[6] We review a trial court's award of fees made

_____

[5] The present case is distinguishable from emotional distress cases where the defendant carried through and procured the plaintiff's arrest. See *Turnage v. Kasper*, 307 Ga. App. 172, 175-177, 183-184 (1) (c) (704 SE2d 842) (2010); *Wal-Mart Stores v. Johnson*, 249 Ga. App. 84, 87 (3) (547 SE2d 320) (2001), overruled in part on other grounds, *Ferrell*, 295 Ga. App. at 333 (2); *K-Mart Corp. v. Lovett*, 241 Ga. App. 26, 27, 29 (3) (525 SE2d 751) (1999), overruled on other grounds, *Golden Peanut Co. v. Bass*, 249 Ga. App. 224, 233-234 (2) (547 SE2d 637) (2001); *Fleming v. U-Haul Co. of Ga.*, 246 Ga. App. 681, 682, 686 (5) (541 SE2d 75) (2000); *Gordon v. Frost*, 193 Ga. App. 517, 520-522 (1) (388 SE2d 362) (1989).

[6] OCGA § 9-15-14 (a) states in relevant part:
In any civil action in any court of record of this state, reasonable and necessary attorney's fees and expenses of litigation shall be awarded to

15

pursuant to OCGA § 9-15-14 (a) under an "any evidence" standard. Id. Yet, "to the extent that the 'evidence' relevant to the question of attorney fees consists of the state of the law, we make our own assessment of that 'evidence' and decide for ourselves whether the claim asserted below presented a justiciable issue of law." (Citations and punctuation omitted.) *Gibson Constr. Co. v. GAA Acquisitions I, LLC*, 314 Ga. App. 674, 676 (725 SE2d 806) (2012).

Guided by these principles, we conclude that the trial court erred in awarding attorney fees to Watson. With respect to the malicious prosecution claim, Renton, in opposing Watson's motion for attorney fees, attached a superior court order from a different case involving different parties upon which Renton relied in bringing her claim. In that order, a superior court judge in DeKalb County denied the defendant's motion for summary judgment on the plaintiff's malicious prosecution claim, where the plaintiff had been ordered to appear before a magistrate judge regarding the defendant's warrant applications, even though no warrants ultimately had been

any party against whom another party has asserted a claim, defense, or other position with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim, defense, or other position. . . .

16

issued. The superior court referred to the plaintiff as having been "summoned" to appear before the magistrate and construed the case of *McNeely*, 275 Ga. App. at 482, as authorizing the plaintiff's malicious prosecution claim, despite the fact that no warrants had issued.

Because another superior court had already accepted the same legal theory advanced by Renton in this case, she could have reasonably believed that a court would accept her malicious prosecution claim. Cf. *Executive Excellence, LLC v. Martin Bros. Investments, LLC*, 309 Ga. App. 279, 288-289 (3) (710 SE2d 169) (2011) (fact that dissenting judges deemed sellers' slander-to-title claims viable "shows that the sellers could have reasonably believed that a court would accept their claims, there was substantial justification for them, and there is no basis for a finding that the sellers brought the claims for delay or harassment"). Although in Division 1 we rejected Renton's legal theory and found her reliance on *McNeely* misplaced,

> we must keep in mind that OCGA § 9-15-14 (a) is intended to discourage the bringing of frivolous claims, not the presentation of questions of first impression about which reasonable minds might disagree or the assertion of novel legal theories that find arguable, albeit limited, support in the existing case law and statutes.

17

*Gibson Constr. Co.*, 314 Ga. App. at 677. See OCGA § 9-15-14 (c) ("No attorney or party shall be assessed attorney's fees as to any claim or defense which the court determines was asserted by said attorney or party in a good faith attempt to establish a new theory of law in Georgia if such new theory of law is based on some recognized precedential or persuasive authority."). In light of these considerations, we conclude that the trial court erred in awarding attorney fees relating to Renton's malicious prosecution claim.

We reach the same conclusion as to Renton's defamation and emotional distress claims. As discussed in Division 2, Renton's defamation claim should not have been dismissed for failure to state a claim upon which relief could be granted, and thus fees should not have been awarded based on that claim.

With regard to Renton's claim for intentional infliction of emotional distress, some support for the claim could be gleaned from the cases cited in footnote 5 in Division 3. Although we ultimately concluded in Division 3 that those cases were distinguishable from the present case given that Watson voluntarily dismissed her warrant application and no arrest occurred, we cannot say that Renton's emotional distress claim was entirely foreclosed by existing precedent or without some arguable support in the case law. See *Gibson Constr. Co.*, 314 Ga. App. at 677. It follows that

18

the trial court erred in awarding attorney fees based on Renton's emotional distress claim, as it did with respect to her malicious prosecution and defamation claims. We therefore reverse the trial court's award of attorney fees under OCGA § 9-15-14 (a).[7]

*Judgment affirmed in part and reversed in part. McFadden and McMillian, JJ., concur.*

---

[7] Watson's motion for sanctions for frivolous appeal under Court of Appeals Rule 15 (b) and OCGA § 5-6-6 is hereby denied.